ALBERT N. DOERSCHUK, Appellant, v. JOHN L. LOCKE ET AL.—51 S. W. (2d) 62.

Division Two, June 10, 1932.*

*McCluer & Wilson* and *Omar E. Robinson* for appellant.

*John D. Wendorff* for respondents.

FITZSIMMONS, C.—This is an action in ejectment. The principal question for decision is the authority of the court below (one of the Divisions of the Jackson County Circuit Court) to make an order *nunc pro tunc*. But first there must be examined certain objections of respondent (defendant below) to the consideration of the appeal upon its merits. These objections go to the filing of the motion for a new trial and to the validity of the order allowing an appeal.

The land in controversy lies in Platte County and this action was begun in the circuit court of that county, but, on the court's own motion, was transferred to the Circuit Court of Jackson County. The cause passed through several divisions of the Jackson County Circuit Court obviously by operation of rules of court and the periodical shifting of the assignment division. But one transfer was by change of venue from Division Six where the cause had two appearances. During its first pendency there and on May 6, 1927, during the March Term, 1927, the court by order of record sustained respondent Locke's

plea in abatement, which had been filed in Division Two, February 15, 1927, during the January Term, 1927.

The order *nunc pro tunc* from which this appeal was taken, was made at a term of court subsequent to the March Term, 1927. It changed by way of correction the order sustaining the plea in abatement to an order or judgment granting to respondent Locke the prayer of a bill of peace, to which reference now will be made. While the plea in abatement was pending in Division Two and on April 21, 1927, during the March Term, 1927, respondent Locke filed an answer termed a bill of peace, and to this answer appellants filed a reply. It thus appears that, when Division Six sustained the plea in abatement on May 6, 1927, there was pending the bill of peace, the allegations of which had been placed at issue by reply.

The plea in abatement and the bill of peace were identical in their allegations. They differed only in the relief sought. They narrated a history of litigation affecting the same land and between the same parties beginning in February, 1915. These controversies included an unlawful detainer suit, decided by a Justice of the Peace in favor of Locke, respondent here, also a suit to quiet title, affirmed by the Supreme Court, June 8, 1922, in favor of Locke, respondent here, (Barr v. Stone (Mo.), 242 S. W. 661), also proceedings in the County Court of Platte County for the purchase of Locke of certain of the land here in suit, which proceedings, upon appeal, were decided by the Supreme Court, June 8, 1922, in favor of Locke, respondent here (Platte County v. Locke, 294 Mo. 207, 242 S. W. 666). And finally, respondent's pleadings alleged another ejectment suit, begun in Platte County and transferred on change of venue to Jackson County and pending in Division Seven of the circuit court of the latter county at the time of the filing of the bill of peace. The plea in abatement prayed for the dismissal of the instant case. The bill of peace asked that appellant be restrained from further prosecuting the case under review, and from instituting or prosecuting any other cause affecting the rights of the parties to the land in question except the other pending ejectment suit, upon the issues of which respondent desired to fight a conclusive battle for the land in suit. Appellant moved to strike from the record the order sustaining the plea in abatement. This motion underwent several orders in other divisions to which the cause passed. It is enough for the purposes of the questions here for decision that the ground of the motion to strike was that the filing of the bill of peace constituted an abandonment of the plea in abatement and therefore that the plea in abatement was without effect or validity at the time of the entry in Division Six of the order sustaining the plea.

On June 6, 1928, the assignment division, then number Four, sent the case back to number Six for all purposes, and on June 7, 1928,

appellant filed an application for a change of venue on account of the bias and prejudice of the Judge of Division Six, he being the same judge who had sustained the plea in abatement. On June 8, 1928, during the May Term, 1928, respondent Locke filed in Division Six a motion for an order *nunc pro tunc* to correct the record entry made in that division at the March Term, 1927, sustaining the plea in abatement so that the order as corrected would be one sustaining respondent's bill of peace. On October 20, 1928, appellant filed in Division Six an amended application for a change of venue, alleging the prejudice of the judge of the division. Two days later the court sustained respondent's motion for an order *nunc pro tunc,* and granted appellant's application for a change of venue as to all matters "except as to the authority of the court to correct its own record in this cause." The cause was sent back to the assignment division then number Five. So much for the facts of record affecting the question of the right of the court to make the order *nunc pro tunc.* Further facts gleaned from the bill of exceptions will be noted later.

Respondent's objections to the consideration of the merits of the appeal go to subsequent record events. On October 25, 1928, within four days after the entry of the order *nunc pro tunc* in Division Six and during the same term, September, 1928, appellant filed his motion for a new trial in the assignment division then number Five to which the cause had been sent on change of venue. While the motion for a new trial was pending, the cause was assigned to Division Nine, presumably by operation of general rules, and, in the latter division, on May 14, 1929, during the May Term, 1929, the motion for a new trial was overruled. On the same day in the same division, Nine, an appeal to this court was duly applied for and allowed.

I. The gist of respondent's objections to our consideration of the appeal is that the motion for a new trial was not filed in the same division in which the order *nunc pro tunc* had been made, and that the appeal had not been taken during the term at which this order had been entered. Respondent contends that the Judge of Division Nine did not have authority or jurisdiction to pass upon the motion for a new trial nor to sign and allow the bill of exceptions nor to grant an appeal. These functions, he argues, could have been exercised only during the term at which the order *nunc pro tunc* was entered, and only by the Judge of Division Six from whom a change of venue has been taken. These objections to the appeal are without merit, and are unsupported by the authorities cited.

At the time that the court in division entered its order *nunc pro tunc,* there was pending before it appellant's amended application for a change of venue. This application alleged that appellant "had good

reason to believe and did believe that he could not have a fair and impartial trial of said cause in Division Number Six for the reason that'' the judge of that division was prejudiced against respondent. Appellant therefore prayed for ''a change of venue in accordance with the statute in such case made and provided.'' The applicable statute is Section 1959, Revised Statutes 1929. It prohibits changes of venue from the Circuit Court of Kansas City to the circuit court of another county ''for the cause that the judge sitting, for the trial of said suit is prejudiced,'' and it provides that upon application for a change of venue for the cause stated ''then said suit shall be *at once* transferred to a division held by some other judge of said circuit court.'' (Italics ours.) Both appellant and respondent concede and agree that, notwithstanding the pendency of the application for a change of venue, the Judge of Division Six had the right to make corrections of his record of proceedings theretofore had in his court. They differ only on the question whether there was before him matter to authorize the order *nunc pro tunc*. In any case it became the duty of the Judge of Division Six to transfer the case at once to another division, and he recognized the limits of his jurisdiction when he caused to be entered this order: ''Thereupon, the plaintiff's application for change of venue is by the court sustained to all matters except as to the rights of the court to correct his own record in this cause, and said cause is hereby returned to the general docket.''

It may be observed that all judges at Kansas City in Jackson County are ''nominated and elected for a certain numbered division in said circuit'' (Sec. 1937, R. S. 1929); and that in Kansas City ''the court in division is where only one judge sits,'' and ''each judge . . . shall have and exercise all the powers and functions which he might have and exercise if he were the sole judge of the court.'' [Sec. 1956, R. S. 1929.] The order *nunc pro tunc* was entered in Division Six on the same day that the change of venue was granted In fact the dual proceedings are recorded in one entry. Appellant had four days after the entry of the order to file his motion for a new trial in whatever division that might acquire jurisdiction of the cause by change of venue. He filed his motion in time and in the division to which the cause had been transferred. The contention therefore that only the judge from whom the change of venue was taken could pass upon the motion for a new trial and the other steps toward appeal is unsound to the point of absurdity. If we were to hold with respondent we would in effect rule that appellant by making application for a change of venue forfeited his rights of appeal.

▮ Of the argument that the motion for a new trial, bill of exceptions and application for appeal had to be acted upon at the term at which the order *nunc pro tunc* was entered it is enough to say that

a judgment is not a finality for the purposes of review during the pendency of a motion for a new trial. An appeal may be taken at the term at which the motion for a new trial is overruled though the formal entry of judgment was made at a previous term. [State ex rel. Scott v. Smith, 104 Mo. 419, 16 S. W. 415; Childs v. Kansas City, St. J. & C. B. R. Co., 117 Mo. 414, 23 S. W. 373; Walter v. Scofield, 167 Mo. 537, 67 S. W. 276.] The order *nunc pro tunc* in this case was in effect a final judgment and is not an exception to the stated rule. The record shows that the motion for a new trial was continued from term to term until it was passed on. The objections to the consideration of the appeal upon its merits are not well taken.

██ II. We cannot affirm the order *nunc pro tunc* changing, by way of correction, the order sustaining the plea in abatement into an order or rather a judgment granting the relief prayed for in the bill of peace. The order *nunc pro tunc* was made as we have seen at a term of court subsequent to the term at which the order, sought to be corrected, was entered. The rule in Missouri governing such orders is thus stated in Collier v. Catherine Lead Co., 208 Mo. 246, 106 S. W. 971, l. c. 977: "The rule is succinctly stated by BURGESS, J., in Ross v. Railway Co., 141 Mo. l. c. 395, 38 S. W. 926, 42 S. W. 957, thus: 'The question of the power and authority of a circuit court to correct its record by *nunc pro tunc* entries has been many times before this court, and the rule announced seems to be that in order to justify it in so doing the record must in some way show, either from the judge's minutes, the clerk's entries, or some paper in the cause, the facts authorizing such entries. No such entries can be made from the memory of the judge, nor on *parol* proof derived from other sources. [State v. Jeffors, 64 Mo. 376; Bank v. Allen, 68 Mo. 476; Belkin v. Rhodes, 76 Mo. 650; Saxton v. Smith, 50 Mo. 490; Fletcher v. Coombs, 58 Mo. 434; Wooldridge v. Quinn, 70 Mo. 370; Blize v. Castlio, 8 Mo. App. 294; Evans v. Fisher, 26 Mo. App. 546.]' "

██ In the instant case the record shows nothing whatever approximating to the requirements of the rule. The bill of exceptions discloses that on October 20, 1928, appellant filed his amended application for a change of venue and he asked the court for an appropriate order. Counsel for respondent, who was present, requested the court to pass upon his motion for an order *nunc pro tunc*. The court directed the attorneys to tell him the facts, and counsel for appellant objected to the telling of any facts except that he had an application for a change of venue. Counsel for respondent then made an extended statement the applicable part of which was that on April 28, 1927, he presented to the court the issues joined on the bill of peace, and that counsel

for appellant, who was present at the time, said that there was no dispute about the facts. Counsel for respondent in his statement to the court as to what transpired on April 28, 1927, also said: "On the 6th of May following your Honor passed on it. Now, the clerk in writing that record said, 'Defendant's Plea in Abatement is sustained.' Now, our contention is I think right that the bill or paper called 'Bill of Peace,' was the one and the only one that we argued and the one that your Honor was to pass on and I am asking the court to correct that entry, the same showing you passed on the 'Bill of Peace,' using that word instead of the 'Plea in Abatement.' The clerk just got the two expressions confused."

The record shows that on May 6, 1927, the plea in abatement was sustained, but it does not show any proceedings or hearing or argument on the bill of peace on April 28, 1927, as narrated by counsel for respondent in support of his application for an order *nunc pro tunc*. The court made the order *nunc pro tunc* two days after coun- for respondent made his statement. It will be presumed that the statement refreshed the memory of the judge. But that is not sufficient. The Missouri rule is sound and it should be enforced, for the preservation of the integrity and sanctity of the records of courts, their orders and judgments, and for the protection of the rights and the performance of the duties which those records create. It may be that, in a given case, this one for example, the rule may work a hardship. But to make an exception would be to destroy efficacy of the rule.

The order *nunc pro tunc* was reversible error. The order accordingly is reversed and the cause is remanded. *Cooley* and *Westhues*, C., concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.