**In re the MARRIAGE OF Karen G. REA and Peter H. Rea.**

**Karen G. REA, Respondent,**

v.

**Peter H. REA, Appellant.**

**No. 15997.**

Missouri Court of Appeals,
Southern District,
Division One.

June 30, 1989.

Jerry L. Redfern, Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, for appellant.

Kent O. Hyde, William C. Love, Harrison, Tucker, Geisler & Hyde, Springfield, for respondent.

CROW, Presiding Judge.

Peter H. Rea appeals from an "Order Nunc Pro Tunc" dated July 1, 1988, inserting a word in a written separation agreement incorporated in a decree entered January 27, 1987, dissolving his marriage to Karen G. Rea.

The 19–page agreement was signed by Karen January 21, 1987, and by Peter the following day. On January 27, 1987, Karen, her lawyers, and Peter's lawyer appeared in circuit court. Karen testified in support of her petition for dissolution of the marriage, and she presented the agreement to the court. The court entered a decree of dissolution providing, among other things:

> "... the ... Agreement ... is not unconscionable; the ... Agreement ... is incorporated in and made a part of this Decree...."

The agreement, in which Karen was designated "Wife" and Peter was designated "Husband," contained, among other provisions, paragraph 9(h) which read:

"In addition to the property set forth hereinabove to Wife, in an effort to more equally divide the properties of the party [sic], Husband agrees to pay to Wife the sum of $100,000.00. Such sum shall be paid in ten (10) annual installments and shall not bear interest. The first payment shall be made by Husband no later than one (1) year from the date of the entry of the Decree herein and each subsequent payment shall be made no later than one (1) year thereafter until the sum is fully paid. Husband shall have the right to prepay said sum in full at any time."

On April 29, 1988, 15 months after entry of the decree, Karen filed a "Motion for Order Nunc Pro Tunc" in the circuit court averring, among other things, that because of a scrivener's error the word "equal" was omitted from the second sentence of paragraph 9(h), and that said sentence should have read: "Such sum shall be paid in ten (10) equal annual installments and shall not bear interest."

Attached to Karen's motion was a transcript of the following passage from her testimony at the dissolution hearing January 27, 1987:

"Q. How do you anticipate you're going to provide for yourself?

A. Well ... we won't have house payments and I'll have the child support and the income that's in the settlement, the ten thousand dollars a year.

Q. Alright. The settlement provides that your husband is to pay you a hundred, total of a hundred thousand dollars—ten thousand dollars a year over a ten year period. And, that is property settlement. That is not maintenance.

A. That's right."

On June 8, 1988, Peter filed in the circuit court an "Affidavit in Opposition to Motion for Order Nunc Pro Tunc," stating:

"... the Separation Agreement and final decree entered in my dissolution action contains no scrivener's error, and at no time, in any way, shape or form, direct or indirect, was it ever agreed that the word 'equal' was to appear or be inserted so as to cause the annual payments to be ten equal annual installments; rather the whole thrust and consent of the agreement was that the sum of $100,000.00 would be paid on or before 10 years from date in annual installments without interest.

....

This affaiant [sic] would not have signed the agreement with the word 'equal' inserted.

Affiant had no contact with his former wife in the drafting of the document, and the drafting was done as a proposal from [her] and her attorneys, and was accepted as written and should not be changed, there being no error therein contained."

On June 13, 1988, the circuit court conducted a hearing on Karen's motion. Her lawyer asked the court to consider the transcript of the dissolution hearing of January 27, 1987; Peter's lawyer directed the court to Peter's affidavit. No other evidence was offered by either party.

On July 1, 1988, the circuit court entered the order giving rise to this appeal. The order provided:

"... that the Decree of January 27, 1987, shall be corrected so that the word 'equal' shall be and is hereby inserted into Paragraph 9(h) of the Property Settlement Agreement ... as incorporated in said Decree between the words 'ten (10)' and 'annual' so that said paragraph shall state as follows:

In addition to the property set forth hereinabove to Wife, in an effort to more equally divide the properties of the party [sic], Husband agrees to pay to Wife the sum of $100,000.00. Such sum shall be paid in ten (10) equal annual installments and shall not bear interest. The first payment shall be made by Husband no later than one (1) year from the date of the entry of the Decree herein and each subsequent payment shall be made no later than one (1) year thereafter until the sum is fully paid. Husband shall have the

right to prepay said sum in full at any time."

The law governing correction of judicial records nunc pro tunc was set forth by Judge Stone in *E.C. Robinson Lumber Co. v. Hazel,* 271 S.W.2d 610, 612 (Mo.App. 1954):

"Every court has inherent power to correct errors in its records resulting from clerical mistakes or misprisions of its clerk [citations omitted].... However, no principle is more firmly established in this jurisdiction than that, after a judgment has become final, an order of correction nunc pro tunc cannot be made unless it is supported by and based on some entry, minute or notation in the record, or some paper on file in the case. [Citations omitted] That no such order nunc pro tunc can be made on parol evidence is settled and not open to argument. [Citations omitted]."

In *E.C. Robinson* a party sought nunc pro tunc correction of a court record showing the date a pleading had been filed. Such party presented testimony and documentary evidence in support of its prayer, but failed to demonstrate that the requested change was supported by any entry, minute or notation in the case record, or any paper on file therein. Upholding the trial court's denial of relief the opinion cited, among other authorities, *Doerschuk v. Locke,* 330 Mo. 819, 51 S.W.2d 62, 64 (1932), which says:

"The Missouri rule [that in order to justify correction of a court record nunc pro tunc the record must in some way show, either from the judge's minutes, the clerk's entries, or some paper in the cause, the facts authorizing such correction] is sound, and it should be enforced for the preservation of the integrity and sanctity of the records of courts, their orders and judgments, and for the protection of the rights, and the performance of the duties which those records create. It may be that, in a given case, this one for example, the rule may work a hardship. But to make an exception would be to destroy efficacy of the rule."

Karen acknowledges the rule that a correction nunc pro tunc must in some manner be supported by the record. She maintains the transcript of the testimony she gave at the dissolution hearing January 27, 1987, a portion of which was quoted earlier, satisfies that requirement. Karen asserts it is clear from her testimony that the parties' intent was for the agreement to provide ten annual payments of $10,000 each. She emphasizes that at the dissolution hearing Peter's lawyer did not contradict her testimony to that effect and "made no effort to demonstrate an alternative interpretation."

*In re Marriage of Royall,* 569 S.W.2d 369 (Mo.App.1978), according to Karen, is identical to the instant case. In *Royall* a husband and wife entered into a separation agreement providing for the wife—the respondent—to have custody of the parties' children, and for the husband—the petitioner—to pay child support. The parties also drafted an attachment containing provisions for the petitioner's temporary custody and visitation of the children. The attachment further provided that the "defendant" was to pay the "plaintiff" specified sums for child support. The decree granted custody of the children to the wife, visitation rights and temporary custody to the husband per the attachment, and provided that the petitioner was to have and recover child support per the attachment. Some 32 months later the former wife (respondent) moved to amend the decree nunc pro tunc so it would provide that she, the respondent, was to have and recover child support per the parties' agreement.

Upholding the granting of nunc pro tunc relief, the Eastern District of this Court pointed out that the separation agreement clearly required the petitioner to pay child support to the respondent, and that a minute entry made the date the decree was entered provided that the agreement was found to be conscionable and was incorporated in the decree. *Id.* at 371. A form signed by both parties, their attorneys, and the judge stated that the petitioner husband was ordered to pay the respondent wife child support per the attachment. *Id.* The error was made in the attachment where the words "defendant" and "plain-

tiff" were transposed, and this led to the error in the decree. The appellate court held the record showed conclusively that the judgment rendered by the trial court was to order the husband to pay child support to the wife. *Id.* The appellate court also amended the attachment to the decree—an essential task the trial court had overlooked—so as to require the petitioner to pay the respondent child support. Karen likens the order of the circuit court in the instant case inserting the word "equal" in paragraph 9(h) of the separation agreement to the order in *Royall* amending the attachment and the decree.

There is a fundamental difference between *Royall* and the instant case. In *Royall* a minute entry in the case record made on the date the decree was entered stated that the separation agreement (which correctly provided that the petitioner was to pay child support) was found conscionable and was to be incorporated in the decree. There was also a form in the case record, signed by both parties, their attorneys, and the judge providing that the petitioner husband was to pay the respondent wife child support per the attachment. There were, consequently, two documents in the case record demonstrating that it was the petitioner husband who was to pay child support to the respondent wife.

No similar documentation exists in the instant case. The only writing supporting the nunc pro tunc relief sought by Karen is the transcript of her testimony at the dissolution hearing. It, of course, is not signed by Peter or his lawyer, nor is it a minute entry or notation authored by the judge or his clerk.

*Johnson v. Johnson,* 654 S.W.2d 212 (Mo.App.1983), also cited by Karen, was another case where a nunc pro tunc correction of a dissolution decree was affirmed. Again, however, we find no support for Karen. In *Johnson* the parties' separation agreement provided for the husband to pay the wife annual maintenance of $22,400, but called for the maintenance to be reduced *by* $13,500 annually if the wife sold or leased the marital home. The dissolution decree stated that the maintenance,

upon sale or lease of the home, was to be reduced *to* $13,500. Five years after entry of the decree the former wife sold the marital home, after which she demanded annual maintenance of $13,500. The trial court granted the husband's application to amend the decree nunc pro tunc to provide that the maintenance was reduced by $13,-500. Affirming the correction, the Eastern District of this Court acknowledged that correction of a judgment nunc pro tunc cannot be made unless supported by some writing in the record which shows the judgment as actually rendered. *Id.* at 213[1]. The parties' written separation agreement, found by the trial court not to be unconscionable and incorporated in the decree, supplied the requisite documentation. *Id.* at 213–14.

In the instant case the circuit court, by its order of July 1, 1988, did not change its decree to coincide with the parties' separation agreement as had the court in *Johnson,* instead the circuit court in the instant case inserted an adjective in the agreement so it would read the way Karen says it was intended.

Peter insists the circuit court had no authority to do so. Peter cites § 452.325, RSMo 1986, which provides, in pertinent part:

"2. In a proceeding for dissolution of marriage ... the terms of the separation agreement, except terms providing for the custody, support, and visitation of children, are binding upon the court unless it finds ... that the separation agreement is unconscionable.

3. If the court finds the separation agreement unconscionable, the court may request the parties to submit a revised separation agreement or the court may make orders for the disposition of property....

4. If the court finds that the separation agreement is not unconscionable as to support, maintenance, and property:

(1) Unless the separation agreement provides to the contrary, its terms shall be set forth in the decree of dissolution ... and the parties shall be ordered to perform them[.]

...."

■ Peter directs us to *In re Marriage of Wilfong,* 658 S.W.2d 45 (Mo.App.1983), which holds that the terms of a separation agreement as to disposition of property are binding on a trial court unless it finds the agreement unconscionable. *Id.* at 48[8]. If the court finds the agreement unconscionable the court may request the parties to make a new agreement or the court itself may divide the property. *Id.* at 48[9]. If the court finds the agreement not unconscionable it is error for the court to enter a decree disposing of property contrary to the agreement. *Id.* at 49. *See: Degerinis v. Degerinis,* 724 S.W.2d 717, 720 (Mo.App. 1987).

Karen asserts that in approving a separation agreement a trial court is not bound to a technical reading of the agreement in determining whether it is conscionable, but instead reads the agreement in light of the testimony of the parties with respect to the intent and meaning of the terms. In support of this declaration Karen cites *Wilhoit v. Wilhoit,* 599 S.W.2d 74 (Mo.App.1980). We have studied *Wilhoit* and have been unable to find any such principle expressed there. More importantly, however, the question here is not one of interpretation of the separation agreement, but is instead whether the circuit court was correct in inserting the word "equal" in the second sentence of paragraph 9(h).

■ Paragraph 12 of the separation agreement provides:

"This Agreement contains the entire understanding between the parties. No modification ... of any of the terms of this Agreement will be valid unless made in writing...."

Suppose, at the dissolution hearing January 27, 1987, Karen (or her lawyer) had noticed paragraph 9(h) of the agreement did not specify that the annual installments to be paid by Peter were to be equal, and suppose Karen had asked the circuit court at that time to insert the word "equal" prior to the word "annual" in the second sentence of that paragraph before making a finding as to whether the agreement was conscionable. Could it be seriously argued that the circuit court would have had the authority to add the word absent manifestation by both parties that the addition would make the agreement read the way they intended?

We believe the answer is obviously no. As observed earlier, the terms of a separation agreement as to disposition of property are binding on a trial court unless ·it finds the agreement unconscionable. *Wilfong,* 658 S.W.2d at 48[8]. The insertion of the word "equal" as sought by Karen arguably alters Peter's obligation under paragraph 9(h), otherwise Karen would not have asked for such relief.

If the circuit court could not have unilaterally added the word "equal" to paragraph 9(h) at the time the dissolution decree was entered, we fail to see how the circuit court could do so under the guise of a nunc pro tunc correction 17 months later.

In sum, there is no entry, minute or notation in the record and no paper on file showing that the circuit court's judgment of January 27, 1987, was that Peter would pay Karen the $100,000 in ten equal annual installments. An order correcting a judgment nunc pro tunc can be made only upon evidence furnished by the papers and files in the cause, or in the clerk's minute book, or on the judge's docket. *Ackley v. Ackley,* 257 S.W.2d 401, 403[1] (Mo.App.1953). The only paper supporting Karen's request is the transcript of her testimony but, as explained earlier, a court record cannot be corrected nunc pro tunc on parol proof from sources other than an entry, minute or notation in the case record or some paper on file in the case. *Doerschuk,* 51 S.W.2d at 64; *E.C. Robinson,* 271 S.W.2d at 612[3]. Parol evidence is oral or verbal evidence; that kind which is given by word of mouth; the ordinary kind of evidence given by witnesses in court. Black's Law Dictionary 1273 (4th ed. 1951). In a particular sense, and with reference to contracts, deeds, wills, and other writings, parol evidence is the same as extraneous evidence or evidence *aliunde. Id. See: Norden v. Friedman,* 756 S.W.2d 158, 163 (Mo. banc 1988); *Kanawha Banking & Trust Co. v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225, 233

(1947). The fact that Karen's testimony at the dissolution hearing was transcribed on paper by the court reporter at a later date does not change the fact that Karen's testimony was oral evidence upon which she now seeks to base her claim for nunc pro tunc relief.

We hold that Karen failed to meet the requirements for correction of the separation agreement incorporated in the dissolution decree nunc pro tunc, therefore the circuit court erred in entering its order of July 1, 1988. Whether some other procedure may be available to Karen for seeking the relief she wants is a question not before us in this appeal and we offer no comment on the subject.

The circuit court's order of July 1, 1988, is reversed.

HOLSTEIN, C.J., and PREWITT, J., concur.

GREENE, J., recused.

**J.R., Plaintiff–Appellant,**