### Clyde F. BRENNAN, Petitioner–Respondent, Cross–Appellant,

v.

### Mary Agnes BRENNAN, Respondent–Appellant.

### Nos. 71277, 71281.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 23, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1997.

Eckelkamp, Eckelkamp, Wood & Kuenzel, Gael D. Wood, Washington, for appellant.

Kopsky & Associates, P.C., John D. Husmann, Co–Counsel, Chesterfield, Lee H. Bushie, Co–Counsel, St. James, for respondent.

KAROHL, Judge.

Mary Brennan (Wife) appeals an amended judgment and decree dissolving her marriage to Clyde Brennan (Husband). During the appeal process, Husband died. His estate cross-appeals. The parties' issues on appeal include: 1) which of two paragraphs of the parties' prenuptial agreement should be applied to control the court's award of maintenance; 2) whether the trial court abused its discretion in valuing items of marital property; and 3) whether the trial court erred by ignoring relevant provisions of the prenuptial agreement in ordering Husband to pay Wife a property division payment, as well as, Wife's attorney's fees.

The parties were married in Rochester, New York, on March 29, 1991. Two days before the marriage, they freely entered into a prenuptial agreement and considered themselves bound by its terms. After the marriage, Wife moved to Husband's home in Gasconade County, Missouri. In October of 1991, Wife went to work at Phelps County Hospital as assistant director for critical care services. She held this job until it was eliminated on January 1, 1994, at which time her salary was approximately $53,000 per year. During the marriage Husband was retired. He received approximately $80,000 per year in investment income. He had approximately $400,000 invested in retirement accounts.

Prior to May 1995, the parties lived together without extraordinary problems. Wife was unhappy because she suspected Husband engaged in some "closet drinking." On May 8, 1995, Wife's daughter, who, along with her family had been staying with the parties, called Husband a profane term. Wife asked her daughter to withdraw the comment, and she refused. Husband then told all of Wife's family to leave his house. Wife left with her family and did not return for two days. Thereafter, the marriage deteriorated. While Wife was out of the home for those two days, Husband was arrested on a driving while intoxicated charge that was later dropped. After Wife returned and stayed with Husband for a few days, she believed he was drinking. On May 13, 1995, Husband ordered Wife to leave the house. Following what she believed to be a series of unusual actions on the part of Husband, Wife sought and received an involuntary commitment of Husband. The dissolution proceeding followed.

Husband filed a petition for dissolution of marriage on June 2, 1995. Wife filed a motion pendente lite (PDL), upon which the trial court ordered Husband to pay Wife temporary maintenance and $3,000 for attorney's fees. Husband did not contest this amount as a violation of the prenuptial agreement. After Husband failed to compensate Wife for her attorney's fees within a reasonable time, the court found Husband in contempt. Husband was jailed until he paid the attorney's fees. On February 26, 1996, Wife counter-petitioned for dissolution of the marriage. The trial court entered the original judgment and decree of dissolution on June 18, 1996. Both parties filed post-trial motions. The trial court amended the decree of dissolution and entered an order denying both parties' post-trial motions. It awarded Wife an additional $3,000 in attorney's fees plus $3,500 in attorney's fees and costs for Wife's appeal. Both parties appeal. After the appeals were filed, Husband died and his estate was substituted as a party.

Husband and Wife each allege two points of trial court error. We will address Wife's points first. First, Wife argues the trial court erred in applying the provisions of Paragraph 3.2 instead of Paragraph 3.3 of the parties' prenuptial agreement, thereby placing limitations on her maintenance award. Specifically, Wife argues there was no substantial evidence before the court to support a finding Husband's drinking was a reason for the "divorce," making Paragraph 3.2 inapplicable.

The pertinent provisions of the parties' prenuptial agreement read as follows:

3.2 *Reason(s) for the divorce action shall be established with substantial evidence. If [Husband] begins drinking alcoholic beverages without [Wife's] permission or commits acts of infidelity during the first six years, then he will pay [Wife] $2,000 per month for her life or until she remarries. Such amount will be reduced by [Wife's] income; in the seventh year and thereafter the amount will be reduced by*

social security benefits paid or payable if drawn out. If [Wife] should commit acts of infidelity, she will leave the farm or other living facility (if the couple are living elsewhere), and provide for herself without seeking any monies or other assets from [Husband].

3.3 *If the parties are incompatible by mutual consent,* [Husband] will pay [Wife] $2,000.00 per month for her life or until she remarries. (emphasis added).

The parties agree one of the two provisions in the prenuptial agreement applies. The dispute is simply whether Paragraph 3.2 or 3.3 of the prenuptial agreement controls the award of maintenance. Husband's payments to Wife are reduced by her income and social security benefits if Paragraph 3.2 applies. Husband's payments to Wife are not subject to reductions if Paragraph 3.3 applies.

The trial court concluded Paragraph 3.2 applied. It found Husband's "closet drinking" was a basis for the breakdown of the parties' relationship and their marriage. Conversely, it concluded the parties were not incompatible by mutual consent. It determined the parties had done nothing by mutual consent during the last stages of the marriage, as well as, during the dissolution process.

■ We will sustain evidentiary findings "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and a firm belief that the decree or judgment is wrong." *Id.* "Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01(c)(2). A trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. *Morgan v. Morgan,* 701 S.W.2d 177, 179 (Mo.App.1985). When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that

are favorable to the trial court's decree and disregard all contrary evidence. *Id.*

■ There was substantial evidence to support the trial court's finding that Paragraph 3.2 of the prenuptial agreement controls because Husband began drinking without Wife's permission. First, Wife testified she suspected Husband engaged in some "closet drinking" in 1994, as well as, on the day of the parties' final separation. Second, during Husband's involuntary commitment, the Missouri Department of Mental Health prepared a social service assessment which disclosed Husband's drinking. The social service assessment included a summary of an interview with the Gasconade County Sheriff that when he went out to Husband's farm, he saw a half-empty bottle of whiskey with the "lid" off on the table next to Husband. He described Husband as a "great guy if he could just 'get off the booze.'" Third, Husband's daughter remarked that her father drank a week to ten days prior to the social service assessment. Fourth, Husband's sister said, "he puts alcohol in a Pepsi–Cola bottle, but what he does not know is he cannot smell it himself, however he reeks of alcohol." Fifth, Wife recalled that while Husband was committed, she returned to the farm to clean up and found "alcohol and bottles of alcohol everywhere." Finally, the two assessors for the state concluded "[f]urther evaluation [was] necessary, and a treatment team decision be made in regard to alcohol treatment." They also determined that "[i]t may be possible to provide sufficient support so that this patient will be willing to acknowledge his difficulties with alcohol abuse. It is, however, unlikely that he will voluntarily enter alcoholism treatment." The trial court's finding that Husband's drinking was a reason for the "divorce action" was supported by the evidence.

We need not detail our conclusion that there was evidence to support the related finding that the parties never agreed they were incompatible and for that alternative reason, Paragraph 3.3 did not apply. Wife's first point is denied.

In Wife's second claim of error, she argues the trial court abused its discretion by first, assigning inappropriate values to marital

property not supported by the evidence, and second, based upon the inappropriate values, ordering Husband to pay only $4,000 to Wife, rather than the $16,603 she claimed.

The trial court divided marital property. It awarded a brush hog and a vehicle to Husband and a vehicle to Wife with the car loan to be paid by Husband. It also awarded items of tangible personal property it valued at very nearly $23,000 for each party. The trial court awarded and valued the items as follows:

| Description | [Husband]-value | [Wife]-value |
| --- | --- | --- |
| Exterior, pool, garage | $ 8,000.00 | $ 100.00 |
| Kitchen | $ 1,000.00 | $ 580.00 |
| Dining Room | $ 3,500.00 | $ 1,500.00 |
| Great Room | $ 4,000.00 | $ 1,000.00 |
| Powder room | $ 260.00 | –0– |
| Collectibles | $ 540.00 | $ 3,750.00 |
| Master Bedroom & bath | $ 5,000.00 | $ 1,850.00 |
| Blue room, bath, closet | $ 220.00 | $ 535.00 |
| Lower level bedroom & bath | $ 180.00 | $ 450.00 |
| Lower level | $ 500.00 | $ 700.00 |
| Store room | $ 350.00 | $ 240.00 |
| Diamonds | –0– | $11,000.00 |
| Chair and bike | –0– | $ 1,080.00 |
| Notre Dame jewelry | –0– | $ 200.00 |
|  | $23,550.00 | $22,985.00 |

There is no dispute the property awarded was marital property. Wife disputes the trial court's valuations of the diamond earrings awarded her and the marital property awarded Husband. The trial court is prohibited from entering a valuation of the property not supported by any evidence at trial. *Williams v. Williams*, 716 S.W.2d 13, 16 (Mo.App.1986).

The evidence of valuations consisted of Wife's testimony, an appraisal of the diamond earrings and exhibits offered by both parties. Except for the diamond earrings, the court accepted Wife's values for her own marital property awarded to her. Wife testified she purchased the diamond earrings in September 1993 for $11,087. Just prior to trial Wife obtained an opinion of an appraiser that the earrings were worth $3,900. The trial court found the value of the earrings to be $11,000, rather than Wife's assigned value of $3,900. There was no evidence to support a finding the purchase price was more than fair market value at the time of purchase or that the value had decreased since purchase. We find the trial court's valuation of Wife's

diamond earrings supported by the evidence at trial.

As to the marital property awarded to Husband, Wife argues the **"only uncontradicted evidence"** offered as to the value of the items of marital property were those values she listed in her exhibits and her testimony admitted at trial. Wife's argument that her valuations were unopposed is factually inaccurate. Wife did not present valuations in the statement of facts section of her brief. If she had, it would have been necessary to note Husband's Exhibit 8 was offered and admitted over Wife's objections. Exhibit 8 contains statements of Husband's valuations. He valued his own marital property at $14,497 in opposition to her valuation of $30,584. The trial court valued Husband's property at $23,550. Valuations by the trial court were within the range of values offered by the parties. We find the trial court did not abuse its discretion. Point denied.

Husband cross-appeals to argue the trial court erred by ordering him to pay to Wife: (1) $4,000 as a supplement to its award of marital property to her; and (2) attorney's fees. Specifically, he argues these payments violate the terms of the parties' prenuptial agreement.

First, Husband argues the court erred in dividing marital property contrary to the parties' prenuptial agreement when it ordered him to supplement the award of martial property to Wife with a payment of $4,000. He asserts the order to pay Wife from his separate property violates Paragraph 3.4 of the prenuptial agreement which states:

Husband to Be and Wife to Be acknowledge that provision has been made in this Agreement for the division of all of their marital property and that all of their respective non-marital property has been set apart to each of them herein. Accordingly, no further order regarding property acquired on or prior to the date of this Agreement need be entered by the Court upon the entry of the Decree. With respect to property acquired by either party in his or her own name after the date of this Agreement the parties hereby con-

tract and agree that any and all such property shall, pursuant to Section 452.330.2(4), of the Revised Statutes of Missouri, be excluded from the definition of marital property and shall, therefore, be the separate property of the party acquiring same, so that the order of the Court regarding such after-acquired property would set such property apart to the party who acquired it in his or her own name.

We find no violation. Paragraph 3.4 contains an agreement that separate property will not be subject to judicial order and property acquired and held in separate names shall not be subject to division as marital property. It does not limit a court in dividing what the parties agree is marital property. What the court actually did was: (1) award specified items of tangible personal property of approximate equal value to the parties; (2) find Wife was "entitled to a larger percentage of the marital property"; and (3) order Husband to pay Wife $4,000. Because the court awarded Husband marital property having a value of more than $4,000, the money award was not necessarily payable from separate property protected by Paragraph 3.4 of the prenuptial agreement. At Husband's option the money judgment was payable from proceeds of the sale of items of tangible property awarded to him as marital property or from another source; particularly Husband's half of income tax refunds. Point denied.

Second, Husband argues the court erred when it ordered him to pay Wife's attorney's fees contrary to the parties' prenuptial agreement. Husband's argument is directed only at fees awarded in the decree and for this appeal. He did not defend Wife's PDL request for attorney's fees by reference to the prenuptial agreement. We consider only the award of $3,000 in attorney's fees in the amended decree of dissolution and the award of $3,500 for attorney's fees and costs for this appeal.

■ The trial court acknowledged the decree and post-decree awards were prohibited by the prenuptial agreement. It found that although the prenuptial agreement in Paragraphs 4.4 and 4.5 required the parties pay their own attorney's fees, Wife had no ability to pay the fees incurred. For that reason, it concluded the clause requiring Wife pay her own attorney's fees was unconscionable. It made no reference to an issue of public policy, nor did Wife.

The court enforced some provisions of the prenuptial agreement. Husband wants the provision for attorney's fees also enforced. He relies on Section 452.325 RSMo 1994, in arguing the court must accept or reject the agreement as a whole. Wife replies the trial court was not precluded from selectively rejecting parts of a prenuptial agreement it finds unconscionable. She argues Section 452.325 applies to separation agreements when separation or dissolution is imminent, not prenuptial agreements.

The issue of selectivity in enforcing some but not all of the provisions of a prenuptial agreement has not been decided. Section 452.325 suggests a court may not selectively apply portions of separation agreements while rejecting other sections as unconscionable. *In re Marriage of Linnenburger*, 741 S.W.2d 872, 878 (Mo.App.1987). Separation agreements are an integrated whole, and as such, each provision bears on the others. *Id.* If some of the terms of a separation agreement are binding and others are not, great imbalances in the various provisions of the agreement may come into existence, and therefore, the selectively applied agreement may not be in accord with what the parties originally intended. *Id.*

This "unconscionability" test applies to settlement agreements. However, settlement agreements are negotiated in contemplation of judicial approval, whereas prenuptial agreements are not so conditioned. *See In re Marriage of Rea*, 773 S.W.2d 230, 234 (Mo.App.1989). In *Rea*, the Southern District held a trial court which finds a settlement agreement unconscionable can either: (1) request the parties make a new agreement; or (2) reject it entirely and divide the martial property itself. *Id.* If the court finds the agreement conscionable, it is error for it to enter a decree disposing of marital property contrary to the agreement. *Id.*

In addition, the Western District held prenuptial agreements will be upheld and will

dispose of issues of property division unless the agreement is found to be unconscionable. *Sprock v. Sprock*, 882 S.W.2d 183, 186 (Mo. App.W.D.1994). It did not distinguish a consideration of the entire agreement from its parts.

 We see less justification for selectively enforcing a prenuptial agreement than a settlement agreement. We find *Linnenburger* controlling. A court may not selectively enforce part and reject part of a prenuptial agreement. Such agreements are conscionable, or not, in their entirety, when made by the parties. Here, the parties agreed the prenuptial agreement was enforceable on maintenance and other issues. Wife never argued or offered evidence to support a finding that at the time of the agreement or at the time of dissolution the economic facts and circumstances were such that public policy and fairness invalidated the parties' prenuptial agreement clause requiring Wife pay her own attorney's fees. *See Darr v. Darr*, 950 S.W.2d 867 (Mo.App.E.D.1997). The agreement forecloses an award of trial and appeal attorney's fees.

We affirm the maintenance and division of property awards. We reverse the award of attorney's fees in the decree and on motion pending appeal. One half of court costs are to be paid by each party.

AHRENS, P.J., and CRANDALL, J., concur.