**ARONSON'S MEN'S STORES, INC., a Missouri Corp., Appellant,**

v.

**POTTER ELECTRIC SIGNAL COMPANY, INC., a Missouri Corp., Respondent.**

No. 63209.

Supreme Court of Missouri, En Banc.

May 11, 1982.

Alan G. Kimbrell, St. Louis, for appellant.

Ralph C. Kleinschmidt, Gerre S. Langton, St. Louis, for respondent.

MORGAN, Judge.

Appellant (plaintiff) filed this suit for damage to its property based on strict liability in tort and breach of warranty; and, after trial to a jury, a verdict was returned in favor of respondent (defendant). Judgment was entered accordingly, and appeal was taken to the Eastern District of the Court of Appeals. After an opinion affirming the judgment was filed, we accepted transfer and now consider the matter as on original appeal.

Milton H. Aronson is president of appellant and owns a majority of its stock. The corporation owns men's stores in the St. Louis area, but our interest is limited to the one store in the Hampton Village Shopping Center.

In 1957 Mr. Aronson contracted for the installation of a burglar alarm by Merchants Alarm System which was taken over by respondent, Potter Electric Signal Company, Inc. The alarm was a "local" type which rings only at the location. It consisted of three major parts in addition to the wiring: an alarm switch box located on the left side of the front door as viewed from inside; a box containing batteries located on the inside wall to the right of the front door; and a key arrangement outside the door by which the system was activated. The contract called for appellant to lease the alarm and to pay a monthly fee for service and maintenance. Signing of formal renewal agreements ceased in 1970 because only the "fee" would be changed each year, plus some suggestion Mr. Aronson disapproved of a liquidated damage clause therein.

On the weekend in question, an assistant manager followed the usual routine when he closed the store on Saturday. He turned on the inside switch, checked to see if the power was on, locked the front door and then activated the alarm with the outside key. On his return to the store on Monday, he deactivated the alarm from the outside and started to unlock the door. To his surprise the inside portion of the lock fell to the floor, and at that time he noticed that merchandise and certain furnishings of a

wholesale value of $22,651.54 had been stolen.

The evidence indicated that Mr. Aronson had been warned that his system was outdated and could be described as a "horse and buggy" system; that he had rejected any suggestion that it be updated; that he did not want to spend the additional money although he had been the victim of three prior burglaries at other stores. Thereafter, as noted, the jury rejected appellant's claims and returned a verdict in favor of respondent.

As requested by appellant, the trial court submitted the cause to the jury upon two theories: one being breach of warranty of fitness for a particular use (MAI 25.03)[1] and the other being strict liability in tort (MAI 25.04).[2]

Appellant has not raised any issue on appeal relating to the submission under a breach of warranty theory, but does assert that he was deprived of a fair presentation and submission of his claim under a theory of strict liability.

Missouri adopted the theory of strict liability in tort as set forth in Restatement of Torts, Second, Sec. 402A, in the case of *Keener v. Dayton Electric Mfg. Co.*, 445 S.W. 362 (Mo.1969). The relevant portion of 402A provides that:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property . . . .

Appellant's submission under strict liability, as shown by the allegations in its petition, was based upon the burglar alarm being in a defective condition, unreasonably dangerous, because: (1) it failed to sound a reasonable alarm for a reasonable period of time, (2) the control box was too close to the door to prevent easy deactivation and (3) the absence of a locking device allowed the same.

In passing, we do note that the evidence fails to establish whether or not the burglar alarm actually did ring and if it did, for how long. Nevertheless, only two points are carried forward by appellant, and they are closely related.

First, that during closing argument plaintiff sought to advise the jury that: "Unreasonably dangerous, it doesn't just mean dangerous [to] persons as used here, it also means dangerous to property," and that the trial court erred in sustaining an objection to the argument. Appellant seeks to justify the argument because Instruction No. 5 does not so advise; and, respondent defends the ruling as preventing appellant from injecting a false issue in that "[there] was nothing in the evidence to show that any person had been endangered by the alarm system."

Second, that the court erred in refusing to define the term "unreasonably dangerous" as requested by the jury during its deliberations because the term is vague and ambiguous. Respondent suggests that to have done so would have been erroneous under *Houston v. Northup*, 460 S.W.2d 572 (Mo. banc 1970) wherein the Court, at 575, ruled that: "Implicit in a scheme of ap-

---

1. Instruction No. 4:

    Your verdict must be for plaintiff if you believe:

    First, defendant leased an alarm system to plaintiff, and

    Second, the defendant knew or should have known by using ordinary care of the use for which plaintiff leased the alarm system, and

    Third, plaintiff reasonably relied upon defendant's judgment as to the fitness of the alarm system for such use, and

    Fourth, the alarm system was not fit for such use, and

    Fifth, as a direct result plaintiff was damaged.

2. Instruction No. 5:

    Your verdict must be for plaintiff if you believe:

    First, defendant leased the alarm system in the course of defendant's business, and

    Second, the alarm system was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

    Third, the alarm system was used in a manner reasonably anticipated, and

    Fourth, plaintiff was damaged as a direct result of such defective condition as existed when the alarm system was leased.

proved pattern instructions such as MAI is the central idea that such instructions do not require further clarification or amplification. They submit ultimate issues and do so adequately."

In recognition of the arguments as made, we note that it would not be difficult to conclude that appellant correctly states the law reference point one in light of *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo. banc 1977) and *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565 (Mo.App.1977), but not as to point two under the prevailing law announced in *Houston v. Northup, supra.* However, upon our review of the transcript and record, neither issue need be reached.

A defective condition, as found in the Comments to Sec. 402A, ¶ (g), is a "condition not contemplated by the ultimate consumer which will be unreasonably dangerous to him." Paragraph (i) of the same Comments explains that unreasonably dangerous means that: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." While the burglar alarm was arguably "defective" as designed and installed, it was in no sense dangerous and certainly not "unreasonably dangerous" as contemplated by Section 402A. Neither the control box, nor any other part of the system, exploded, ignited or caused harm to appellant's property in any manner, much less suddenly or violently. The most that can be drawn from the pleadings and evidence is that the alarm did not render a level of performance which appellant thought reasonable. Therefore, its proper course was to submit under a negligence or warranty concept.

Negligence and strict liability cases, though viewed similarly in some jurisdictions, are distinguished in our state. As this Court noted in *Blevins v. Cushman Motors, supra*, at 607–08[4]: " . . . there exists an important distinction between the two concepts. In negligence cases the duty owed is based on the foreseeable 'or reasonable anticipation that harm or injury is a likely result of acts or omissions.' *Hull v. Gillioz*, 344 Mo. 1227, 130 S.W.2d 623, 628 (1939); *Taylor v. Hitt*, 342 S.W.2d 489, 494 (Mo.App.1961). On the other hand, strict liability in tort is based in part on the foreseeable, or 'reasonably anticipated' *use* of the product, *Keener*, supra, 445 S.W.2d at 366, rather than on the reasonably anticipated *harm* the product may cause. [5] Stated another way, the difference between negligence and strict liability in tort in defective design cases ' . . . is in strict liability, we are talking about the condition (dangerousness) of an article which is designed in a particular way, while in negligence we are talking about the reasonableness of the manufacturer's actions in designing and selling the article as he did. The article can have a degree of dangerousness which the law of strict liability will not tolerate even though the actions of the designer were entirely reasonable in view of what he knew at the time he planned and sold the manufactured article.' *Phillips v. Kimwood Machine Co.*, 269 Or. 485, 525 P.2d 1033, 1037 (1974); *Roach v. Komonen*, 269 Or. 457, 525 P.2d 125, 129 (1974)."

When examined in light of this distinction, it becomes obvious that appellant could only put into issue the reasonableness of the respondent's actions in designing and selling the product and not any dangerous condition of the product itself. Hence, the strict liability in tort instruction should not have been given as no cause of action was made under that theory.

Appellant's proper submission was under negligence or warranty concepts. It elected to submit under a warranty theory which was rejected by the jury and we find no reason to disturb that finding.

The judgment in favor of respondent is affirmed.

All concur.