Sandra K. UNTERREINER,
Petitioner/Respondent,

v.

ESTATE OF Stephen P. UNTERREIN-
ER, Respondent/Appellant.

No. 66930.

Missouri Court of Appeals,
Eastern District,
Division One.

June 6, 1995.

Michael L. Jackson, Buerkle, Beeson, Ludwig, Wilson & Jackson, Jackson, for appellant.

Malcolm H. Montgomery, Johnson, Montgomery & Maguire, Cape Girardeau, for respondent.

REINHARD, Presiding Judge.

Husband's estate appeals the circuit court's order granting wife's "Motion to

Amend Decree of Dissolution of Marriage *Nunc Pro Tunc*". We affirm.

Wife and husband were married on July 21, 1990. One child was born of the marriage (no issue in this appeal involves the child). On July 1, 1993, wife filed for dissolution of the marriage. Wife and husband privately settled the terms of their dissolution by agreement. At a dissolution hearing held October 14, 1993, both wife and husband testified to the terms of their oral dissolution agreement. Each was represented by counsel. Following testimony by the parties, the court stated the terms of the agreement, as orally presented, were "acceptable." The court added that it would not change any of the terms. The court summarized its judgment to the parties as follows:

THE COURT: Basically, what has been testified here today, just the wording of it, will be set out, and I will sign that. And you'll each get a certified copy from your attorneys in about a week after that. Okay?

[HUSBAND]: Okay. Sounds good.

On October 25, 1993, the court entered a "Decree of Dissolution of Marriage" that purportedly "set out" the terms of dissolution as testified to by the parties.[1]

Relevant to this appeal, the Decree included the following finding of fact:

The parties have agreed that [husband] shall pay to [wife] the sum of $1,000.00 per month as and for maintenance for a period of sixty (60) months, commencing November 1, 1993, and that said award of maintenance shall be not modifiable by either party or by any Court based upon a change of circumstances or remarriage and shall terminate at the end of sixty (60) months.

Related to this finding, the Decree included the following maintenance order:

[Husband] shall pay to [wife] as and for maintenance the sum of $1,000.00 per month for a period of sixty (60) months commencing November 1, 1993. It is

hereby stipulated and agreed by the parties and ordered by this Court that said maintenance award shall not be modifiable by either party for any reason including, but not limited to, a substantial and continuing change of circumstances and/or remarriage and said maintenance award shall terminate after a period of sixty (60) months.

On March 15, 1994, husband died. Section 452.370.3, RSMo 1994, provides that, unless otherwise agreed in writing or expressly provided for in the decree, a maintenance obligation terminates upon the death of either party. Wife filed a motion requesting the dissolution Decree be corrected *nunc pro tunc* to reflect that the judgment rendered included the provision that the maintenance order shall not terminate upon the death of husband. Relying on the transcript from the dissolution hearing, the court granted wife's motion and corrected the maintenance provision to include that maintenance was not modifiable for any reason including "by death of the [husband]."

Husband's estate appeals asserting that the dissolution Decree was final, that the order *nunc pro tunc* was impermissible based on parol evidence and not supported by an entry, minute or notation in the record or paper in the file, and that there was no "clerical error" in the original dissolution Decree as it properly reflected the judgment rendered.

■ Orders *nunc pro tunc* are contemplated in Supreme Court Rule 74.06(a) which provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court *at any time* of its own initiative or on the motion of any party and after such notice, if any, as the court orders." (Emphasis added). Thus, although Rule 75.01 limits jurisdiction of a trial court over its judgment to thirty days following entry of the judgment,

---

1. In their briefs, both parties admit that following the hearing the attorneys submitted a proposed judgment of dissolution which the court adopted as its decree. At the motion hearing, wife attempted to admit testimony by her counsel

to describe the circumstances surrounding the drafting of the proposed judgment. The motion court sustained an objection to this testimonial evidence. On appeal, wife made no assertion of error for excluding this evidence.

"when a clerical error has been made in recording the judgment of the trial court, lapse of time does not bar the court from correcting the record nunc pro tunc to reflect its prior action." *Overby v. Overby,* 682 S.W.2d 872, 873 (Mo.App.1984).

■■■ "The purpose of the nunc pro tunc amendment is to make the record conform to what was actually done. . . ." *Brunton v. Floyd Withers, Inc.,* 716 S.W.2d 823, 826 (Mo.App.1986). Errors can occur between "the judicial act of the court in *rendering* judgment and the ministerial act of *entering* it upon the record." *First Nat. Bk. of Collinsville v. Goldfarb,* 527 S.W.2d 427, 430 (Mo.App.1975). Where such an error occurs, the rendered judgment controls over the entered judgment, and the entered judgment may be corrected *nunc pro tunc* to reflect the controlling rendition. *Id.* However, an order *nunc pro tunc* may be used only to correct a clerical error in entering a rendered judgment, it may not be used to alter or amend the rendered judgment. Thus, a *judicial* mistake in rendering a judgment can not be corrected *nunc pro tunc:*

> Amendments to correct judicial inadvertence, omission, oversight, or error, or to show what the court might or should have done as distinguished from what it actually did, or to conform to what the court intended to do but did not do, may not be made nunc pro tunc.

*Id.* (citing *Wiseman v. Lehmann,* 464 S.W.2d 539, 542–43 (Mo.App.1971); *City of Ferguson v. Nelson,* 438 S.W.2d 249, 253 (Mo.1969); *Potter v. McLin,* 240 Mo.App. 708, 214 S.W.2d 751, 753 (1948)); *see, also, State v. Bulloch,* 838 S.W.2d 510, 513 (Mo. App.W.D.1992).

■ Furthermore, entry of judgment *nunc pro tunc* correcting an error "cannot be made unless supported by some writing in the record which shows the judgment as actually rendered." *Johnson v. Johnson,* 654 S.W.2d 212, 213 (Mo.App.1983).

> [N]o principle is more firmly established in this jurisdiction than that, after a judgment has become final, an order of correction nunc pro tunc cannot be made unless it is supported by and based on some entry, minute or notation in the record, or

some paper on file in the case. That no such order nunc pro tunc can be made on parol evidence is settled and not open to argument.

*In re Marriage of Rea,* 773 S.W.2d 230, 232 (Mo.App.1989) (quoting *E.C. Robinson Lumber Co. v. Hazel,* 271 S.W.2d 610, 612 (Mo. App.1954)).

We begin by noting that if the parties had entered into a *written* separation agreement that was approved by the court, then a motion *nunc pro tunc* would have been proper to correct an error in the entered judgment that deviated from the written agreement. In *In re Marriage of Royall,* 569 S.W.2d 369 (Mo.App.1978), a husband and wife entered into a written separation agreement requiring husband to pay child support to wife. *Id.* at 370. Due to a "clerical error," the dissolution decree mistakenly stated wife was to pay husband child support. We held that the court approved written Stipulation and Agreement of the parties represented the rendered judgment and controlled over the judgment entered, and that a *nunc pro tunc* order was proper to correct the error. *Id.* at 371.

■ The issue before us, therefore, is whether the *oral* stipulations entered into by the parties and approved by the court may also properly be used as a basis for a *nunc pro tunc* correction. In *Fair Mercantile Co. v. Union–May–Stern Co.,* 221 S.W.2d 751 (Mo. banc 1949), our Supreme Court discussed the treatment that should be accorded to stipulations of parties made in open court and spread upon the record where each party was represented by counsel and the court was assured the stipulation was understood by the parties:

> Such a stipulation should be as binding as a written contract; indeed, it is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court. . . . An oral admission or agreement, made in open court for the purposes of the trial or hearing, and preserved in the record, has the same binding force and effect as a written, signed stipulation.

*Id.* 221 S.W.2d at 755 (quoting *Dittmeier v. Laughlin,* 253 S.W. 777, 780 (Mo.App.1923)).

In *Markwardt v. Markwardt,* 617 S.W.2d 461 (Mo.App.1981), we applied this doctrine to testimonial agreements in dissolution proceedings. There, both husband and wife testified to the terms of their settlement agreement. *Id.* at 462. Both parties were represented by counsel, and the court found the agreement "fair, reasonable and conscionable." *Id.* Wife appealed seeking not to be bound by the terms of the agreement. She asserted it was error by the trial court to approve the agreement under the "written separation agreement" provision of § 452.325.1, RSMo 1978, which provides that the parties to a dissolution of marriage proceeding "may enter into a written separation agreement containing the provisions for ... the disposition of property owned by either of them...." We held that the oral stipulation was a valid agreement under the statute. "[A]n oral stipulation should be as binding as a written contract when the oral agreement is entered into in open court by parties represented by able counsel and the agreement is spread upon the record." *Id.* (citing *Fair Mercantile Co. v. Union–May–Stern Co.,* 221 S.W.2d at 755).[2]

We conclude that an entered judgment of a court that deviates from the court-approved oral stipulations should be treated in the same manner as entered judgments that deviate from court-approved written agreements—such entered judgments are subject to correction *nunc pro tunc.* Therefore, the court could properly examine a court reporter's transcription of the parties' stipulation in order to determine whether a mistake was made in entering the Decree and a *nunc pro tunc* order should be entered.

We need not discuss in detail all of those cases holding that a *nunc pro tunc* order may not be based upon parol evidence. However, we are cognizant of the broad language employed in the Southern District case principally relied upon by husband's estate, *In re Marriage of Rea,* 773 S.W.2d 230

(Mo.App.1989). This case held that use of a wife's testimony at her dissolution hearing as a basis of correcting her dissolution decree violated the rule excluding the use of parol evidence as a basis of a *nunc pro tunc* correction. However, the holding of *Rea* was much narrower than the language employed and is distinguishable from the instant case.

In *Rea,* the parties entered into a written dissolution agreement which was submitted to the court. Included in this written agreement was the following clause:

> This Agreement contains the entire understanding between the parties. No modification ... of any of the terms of this Agreement will be valid unless made in writing....

*Id.* at 234. The trial court found the written agreement conscionable and incorporated *the written agreement* into the decree. *Id.* at 230. Wife was subsequently granted an order *nunc pro tunc* amending the maintenance provision of the decree based on her hearing testimony concerning her understanding of the signed and submitted agreement. The Southern District reversed the *nunc pro tunc* order. In *Rea,* the court's rendered judgment was embodied by a signed, written agreement of the parties that, by its terms, was a complete declaration of the dissolution agreement and was modifiable only in writing. The testimony offered by wife in the hearing transcript, therefore, was not properly a part of the rendered judgment, and it was parol to a writing setting out the entire understanding of the agreement that was not modifiable except in writing. Excluding the transcript as a basis for an order *nunc pro tunc* was proper. *Compare, Johnson v. Johnson,* 654 S.W.2d 212 (Mo.App.1983) (transcript used as a basis of a *nunc pro tunc* order where the rendered judgment was based on the oral stipulation).

■ Husband's estate further argues that, even if the transcript may be used as a basis for the order, the transcript does not support the conclusion that the rendered judgment

**2.** We are aware that for some time the Western District did not adhere to the *Fair Mercantile* principle and required separation agreements to be in writing. *See, e.g., Potter v. Potter,* 621 S.W.2d 123 (Mo.App.1981); *Wilhoit v. Wilhoit,* 599 S.W.2d 74 (Mo.App.1980); *Turpin v. Turpin,* 570 S.W.2d 831 (Mo.App.1978). However, in *Carter v. Carter,* 869 S.W.2d 822 (Mo.App.W.D. 1994), the Western District accepted the binding effect of oral agreements.

included the provision that maintenance was to continue even upon the death of husband. We disagree.

We quote from relevant portions of the hearing transcript concerning the parties maintenance agreement:

Q. [WIFE'S ATTORNEY] You are to receive $1,000 per month as and for maintenance; is that correct?

A. [WIFE] Yes.

Q. And that's for a period of five years—

A. Yes.

Q. —starting November 1 of this year; is that correct?

A. That's correct.

Q. That maintenance that you're to be paid by your husband is nonmodifiable?

A. Yes.

Q. Do you understand that?

A. Yes.

Q. *Which means that it's payable no matter what happens over the next five years?*

A. *Yes.*

\*   \*   \*   \*   \*   \*

Q. [HUSBAND'S ATTORNEY] You will receive 1,000 a month maintenance for five years, nonmodifiable?

A. [WIFE] Yes.

Q. If you—something happens to you or anything like that, or you can't work, you still just get the $1,000 a month for five years?

A. Correct.

Q. And it ends at the end of five years. Do you understand that?

A. Yes.

Q. Do you understand that you have, upon showing of a change of circumstances, the right to come into court and petition the Court for a motion to modify if it were not rule not modifiable? That is, in a routine case, you would always be able to modify a maintenance award if you can sustain the burden of proof. And you're giving up that right. Do you understand that?

A. Yes.

Q. And that's been explained to you by [counsel]?

A. Yes.

\*   \*   \*   \*   \*   \*

Q. [COURT] I have a couple of questions—

A. [HUSBAND'S ATTORNEY] Oh, I'm sorry.

Q. —of her first. Or, actually of the attorneys a little bit. The maintenance, is that going to be affected by remarriage within five years?

A. [WIFE'S ATTORNEY] No. It's totally nonmodifiable.

A. [HUSBAND'S ATTORNEY] Nonmodifiable.

Q. Okay.

A. [HUSBAND'S ATTORNEY] It would be—

Q. [COURT] Well, to me, nonmodifiable means by me rather than by statute.

A. [HUSBAND'S ATTORNEY] Yes.

Q. [COURT] Okay. I just want to make—

A. [WIFE'S ATTORNEY] *It's payable regardless of any circumstances over the next six years.*

Q. [COURT] Okay. I—

A. [HUSBAND'S ATTORNEY] Five years.

A. [WIFE] Five.

A. [WIFE'S ATTORNEY] Five years.

Q. [COURT] Five years. I want to have that—be sure that's included in the decree.

A. [HUSBAND'S ATTORNEY] Yes, sir.

\*   \*   \*   \*   \*   \*

Q. [HUSBAND'S ATTORNEY] We also agreed to pay $1,000 per month maintenance to [wife] for a period of five years, which is nonmodifiable. Do you understand that?

A. [HUSBAND] Okay. Yes.

Q. And that means no matter what she does *or what happens to you, or any change of circumstances on your part or her part, remarriage or anything,* she will

continue to receive that $1,000 per month for five years?

A. Yes.

Q. But only five years. And at the end of five years, it ends; is that right?

A. That's correct.

\* \* \* \* \* \*

Q. You also understand that—that she may or may not be entitled to maintenance. She's a licensed cosmetologist and healthy and so on and so forth. But you're under—In an effort to bring this matter to a conclusion, you've agreed to pay her $1,000 for five years—

A. Yes. (Emphasis added).

Interpretation of the agreement presents the most difficult issue in this case. We admit, as do the parties, that neither party used the word "death" or "termination." However, we find no error in the court's determination that the rendered judgment intended the maintenance to wife to continue past the death of husband. The recorded stipulation unambiguously and expressly states that the maintenance continues "no matter what happens over the next five years," "regardless of any circumstances," and "no matter what ... happens to [husband]".

Husband's estate argues that the evidence indicates the agreement was to be nonmodifiable (a change of the decree by a judicial determination of a change of circumstance) but that termination (an end of the obligation by the occurrence of a specified event) under § 452.370.3, RSMo remained possible. Husband's estate notes the confusion of terminology during the court's exchange with the parties' attorneys concerning their meaning of the expression "nonmodifiable." This exchange, however, supports the conclusion maintenance was intended to continue in the event of husband's death. The court recognized the difference between nonmodification and termination by § 452.370.3 due to death or remarriage. The court pointed out the distinction to the attorneys. The attorneys clarified that the agreement of the parties was "nonmodifiable" in the sense that it was "payable regardless of any circumstances," including, from the context of the discussion,

termination by statute. We believe that the motion court's interpretation of the stipulation was fair and reasonable; thus, it committed no error in its correction of the decree.

Judgment affirmed.

GARY M. GAERTNER and CRAHAN, JJ., concur.